UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ATLANTA GAS LIGHT COMPANY, | ) | |
| SOUTHERN COMPANY GAS | ) | |
|    f/k/a AGL Resources Inc. | ) | |
| | ) | |
|         Plaintiffs, | ) | |
| | ) | |
|         v. | ) | No. 1:20-cv-02441-JPH-TAB |
| | ) | |
| NAVIGATORS INSURANCE COMPANY, | ) | |
| | ) | |
|         Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**

This lawsuit involves an insurance coverage dispute between Plaintiffs—Atlanta Gas Light Company and Southern Company Gas (collectively, "AGL")—and Defendant Navigators Insurance Company.  AGL seeks a declaratory judgment of insurance coverage and alleges breach of contract, breach of fiduciary duty, and bad faith.  Navigators has moved to dismiss all claims for failure to join indispensable parties and, alternatively, for failure to state a claim.  Dkt. [19].  For the following reasons, that motion is **DENIED in part and GRANTED in part**.

**I.**
**Facts and Background**

Because Navigators has moved for dismissal, the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001).

1

### A.   The Master Services Agreement

The AGL companies—Atlanta Gas Light Company and Southern Company Gas—are two related Georgia corporations.  Dkt. 1 at 1 (¶¶ 1–2).

In November 2013, AGL contracted with the United States Infrastructure Corporation ("USIC"), an Indiana-based corporation, for USIC to locate and mark gas lines in Georgia.  *Id.* at 2–3, 5 (¶¶ 7, 20) ("Master Locating Services Agreement" between AGL and USIC); *see* dkt. 20-3 at 2, 29.  The Services Agreement required USIC to "carry and maintain" primary and umbrella insurance policies.  Dkt. 1 at 2–3 (¶ 7); *see* dkt. 20-3 at 18, 34.  It also required USIC to add AGL as an insured on both policies.  *See* dkt. 20-3 at 19; *see* dkt. 1 at 2–3 (¶ 7).

### B.   The Insurance Policies

AGL claims coverage under USIC's Umbrella Policy, which Navigators issued.  Dkt. 1 at 9–10.  That policy incorporates the insureds from the underlying policy, dkt. 1 at 6; dkt. 19-6 at 3, which in turn "include[s] as an additional insured any person or organization whom [USIC is] required to add as an additional insured on this policy under a written contract or written agreement," *id.* at 7; dkt. 19-5 at 9, 26.[1]

The Umbrella Policy was negotiated and executed by USIC and Navigators in Indiana.  *See* dkt. 1 at 5 (¶ 20); dkt. 22 at 15; dkt. 55 at 7.  USIC's principal place of business is in Indiana, dkt. 1 at 5 (¶ 20), and it

---

[1] Zurich American Insurance Company issued the underlying policy but is not a party in this case.

operates in multiple states—the Umbrella Policy applies to insured risks in each of those states.  Dkt. 53 at 15.

### C.    The Accident

In August 2018, a pipeline-boring company—LGM Services, LLC—hired USIC "to locate and mark [AGL's] underground gas lines" in Homerville, Georgia "in accordance with state law."  Dkt. 1 at 3 (¶¶ 9–10).  USIC did not properly mark AGL's gas mains.  *See id.* at 3–4 (¶ 11).  As a result, LGM struck one of AGL's gas mains, causing the release of natural gas into a neighboring sewer line.  *Id.* at 4–5 (¶¶ 13–14, 19).  This natural gas leak ultimately caused an explosion at a nearby café, injuring three people—Anna O'Guin, Baylee Tolle, and Emily Tolle ("Injured Parties").  *Id.* (¶¶ 17–19).

### D.    The Claims

The Injured Parties retained counsel and, before any lawsuit was filed, a mediation was scheduled for November 6–7, 2019.  *Id.* at 8 (¶¶ 22–23).  After the Injured Parties sent AGL and USIC liability statements describing their claims, AGL notified Navigators of the mediation and asked it to protect AGL's interests and settle all claims against it.  *Id.* at 8–9 (¶¶ 24, 26).  Navigators did not respond to this request, attend the mediation, or settle the Injured Parties' claims against AGL.  *Id.* at 9 (¶ 27).  The Injured Parties and USIC reached a settlement agreement that released USIC and its insurers "from all liability with respect to" the accident.  Dkt. 22 at 4; dkt. 20-1 p. 3 ¶ 5.

In December 2019, the Injured Parties sued AGL in Georgia state court ("Personal Injury Lawsuits").  Dkt. 1 at 9 (¶ 28); *see* dkt. 19-2 (O'Guin

3

complaint); dkt. 19-3 (Baylee Tolle complaint); dkt. 19-4 (Emily Tolle complaint).[2]  AGL tendered the Personal Injury Lawsuits to Navigators for defense and indemnification.  Dkt. 1 ¶ 29.  Navigators declined all coverage, claiming that the settlement agreement between USIC and the Injured Parties absolved it of any duty to defend or indemnify AGL.  Dkt. 1 at 9 (¶ 29); *see* dkt. 20-1.

### E. Procedural History

In September 2020, AGL brought this case against Navigators, seeking a declaratory judgment of the parties' rights and duties under the Umbrella Policy and alleging breach of contract, breach of fiduciary duty, and dealing in bad faith.  Dkt. 1 at 10–14.  Navigators moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(7) for failure to join indispensable parties or under Rule 12(b)(6) for failure to state a claim.  Dkt. [19].

## II.
## Analysis

### A. Failure to Join Indispensable Parties

Rule 12(b)(7) allows a motion to dismiss for "failure to join a [required] party under" Federal Rule of Civil Procedure 19.  To decide whether Rule 19 "require[s]" a party, courts "must consider (1) whether complete relief can be accorded without [the absent party], (2) whether [the absent party's] ability to protect his interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations" without

---

[2] Anna O'Guin settled her claim against AGL on May 8, 2020.  *See* dkt. 22 at 11 n.2.  The Tolles' cases remain pending.  *See id.*

the absent party. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001); Fed. R. Civ. P. 19(a)(1). In sum, Rule 19's purpose is "to permit joinder of all materially interested parties in a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Davis Cos.*, 268 F.3d at 481. "However, federal courts are reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum." *Id.*

Navigators argues that Bailee and Emily Tolle are required parties because in their absence (1) the Tolles' interests could be impaired and (2) Navigators would be at risk of inconsistent obligations. Dkt. 22 at 12.

## 1. Impairment of the Tolles' Interests

Navigators argues that this suit may impair the Tolles' interests because it would "eliminate a source of funds" from which they could recover if Navigators succeeds on its argument that there is no insurance coverage. Dkt. 22 at 11–12; *see* Fed. R. Civ. P. 19(a)(1)(B)(i). AGL responds that it "has more than sufficient coverage through its own liability insurance to satisfy any judgment rendered in the Tolles' favor against AGL in the" Personal Injury Lawsuits. Dkt. 53 at 12. In resolving this issue, the Court may "look to extrinsic evidence," *Davis Cos.*, 268 F.3d at 480 n.4, and must "examine [the] controversy to make certain that the interests really exist," *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 (1968).

Here, AGL has provided evidence that it can pay any judgment that the Tolles may win against it because other insurance policies "with limits in excess of $35 million per occurrence" were "in full force" when the Tolles were

injured.  Dkt. 53-1 at 1 (Gaffney Decl. ¶¶ 2–4).  In fact, the third injured party, Anna O'Guin, had her settlement "fully funded by AGL and its captive insurer." *Id.*  This evidence shows that any risk that funds will not be available to pay the Tolles for any recovery is "neither large nor unavoidable."  *Provident Tradesmens Bank & Tr. Co.*, 390 U.S. at 114–15.

Instead of challenging that evidence, Navigators pivots to its second argument—that it could face inconsistent obligations without the Tolles.  Dkt. 55 at 5 ("AGL's claim that [it] has sufficient resources to satisfy a judgment ignores that Navigators could face inconsistent results without having the Tolles as parties to this action."); *see In re Veluchamy*, 879 F.3d at 819 (affirming the finding that a non-party was not required because the party advocating joinder "presented no credible evidence").  Therefore, the concern raised in the non-binding cases that Navigators cites—eliminating a potential source of funds—does not apply here.  *See* dkt. 22 at 11 (citing *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 174 F.R.D. 416, 419 (N.D. Ill. 1997); *Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005).

In sum, the Tolles' interests will not be impaired if this suit proceeds without them, so joining them in this action is not required under Fed. R. Civ. P. 19(a)(1)(B)(i).

## 2. Navigators' Risk of Inconsistent Obligations

Navigators argues that the outcome in this case could leave it "at risk of inconsistent obligations" because the Tolles could sue it "in a Georgia State or

6

Federal court" that would not be "bound by any coverage determination reached by this Court."  Dkt. 22 at 12.  AGL responds that the Tolles cannot sue Navigators because of a release in the settlement agreement they reached with USIC.  Dkt. 53 at 11.

The Court does not address that release or AGL's arguments, however, because Navigators would not be "subject to a substantial risk of incurring . . . inconsistent obligations" even if the Tolles could sue Navigators.  Fed. R. Civ. P. 19(a)(1)(B)(ii) (emphasis added).[3]  Navigators argues that a Georgia court may interpret the Umbrella Policy differently in a later suit, *see* dkt. 55 at 5–6, but that would be only an inconsistent *adjudication*, not an inconsistent *obligation* under Rule 19.  *See Buquer v. City of Indianapolis*, No. 1:11-cv-0708-SEB-MJD, 2012 WL 76141, at *4 (S.D. Ind. Jan. 9, 2012) (collecting cases) ("[C]ase law has indicated time and again that 'inconsistent obligations' are distinct from inconsistent adjudications or results, which lie outside the scope of the rule.").  As at least three circuits have held, inconsistent obligations require more than different courts reaching divergent results:

> 'Inconsistent obligations' are not . . . the same as inconsistent adjudications or results.  Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.  Inconsistent adjudications or results, by contrast, occur when a

---

[3] While AGL does not argue that Navigators' concern cannot qualify as an "inconsistent obligation," the Court may "identify and apply the proper construction of the governing law" for Navigators' argument.  *United States v. Robl*, 8 F.4th 515, 528 n.32 (7th Cir. 2021) ("[W]hen an issue or claim is properly before the court; then, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

> defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014) (quoting *Delgado v. Plaza Las Ams., Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) and listing cases).

Navigators does not contend that it would be unable to comply with any order from this Court if the Tolles sue in another court and prevail. *See* dkt. 22 at 12; dkt. 55 at 5–6. For that to happen, the Tolles would have to be unable to recover any damages awarded in the Personal Injury Lawsuits, which—as explained above—the evidence shows is unlikely. Navigators therefore fears only "inconsistent results," which is not a risk relevant to Rule 19(a)(1)(B)(ii). *See Buquer*, 2012 WL 76141, at *4.

\* \* \*

Because the Tolles are not required parties to this lawsuit, Navigators' motion to dismiss under Rule 12(b)(7) is **DENIED**.[4]

### B. Choice of Law

Before addressing the merits of Navigators' 12(b)(6) motion, the Court must determine which state's law applies—Indiana's or Georgia's. Indiana's choice-of-law rules determine which state's substantive law applies. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65

---

[4] The Court therefore does not address whether—if the Tolles were required parties—the case could proceed "in equity and good conscience" without them. *Temple v. Synthes Corp.*, 489 U.S. 5, 8 (1990) ("[N]o inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied.").

(2013) ("A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.").  In contract cases—like this one—"involving multisite, multistate insurance policies," Indiana follows the "uniform-contract-interpretation approach."  *Nat'l Union Fire Ins. Co. v. Std. Fusee Corp.*, 940 N.E.2d 810, 813 (Ind. 2010).  This approach "applies the [substantive] law of a single state to the whole contract even though it covers multiple risks in multiple states."  *Id.*  To determine which single state's substantive law applies, the Court must "consider all acts of the parties touching the transaction in relation to the several states involved" and will apply "the law of that state with which the facts are in *most intimate contact.*"  *Id.* at 814 (emphasis in original).

Applying this analysis to the Services Agreement between AGL and USIC, Navigators argues that Georgia substantive law applies.  *See* dkt. 22 at 13–15.  AGL responds that "the applicable contract to consider" is the Umbrella Policy, not the Services Agreement, and that Indiana substantive law therefore applies.  *See* dkt. 53 at 13–16.[5]  The choice-of-law analysis thus depends on which contract—the Services Agreement or the Umbrella Policy—is central to this case.  *See, e.g., Grange Mut. Cas. Co. v. Hallmark Specialty Ins. Co.*, No. 1:14-cv-00823-TWP-DML, 2016 WL 6395853, at *4 (S.D. Ind. Oct. 28, 2016) ("The major dispute [determining choice of law] is which of the two contracts is principal to this case.").

---

[5] The Court does not address whether there is a potential conflict between Indiana and Georgia law.  *See Nat'l Union Fire Ins.*, 940 N.E.2d at 813 (resolving choice of law while "express[ing] no opinion" on whether Maryland and Indiana law differed).

AGL's complaint in this case is based on the Umbrella Policy.  Dkt. 1 at 5–13 (alleging breach of contract, breach of fiduciary duty, and bad faith—and requesting a declaratory judgment—all regarding the Umbrella Policy).  The Services Agreement is tangential and only relevant because it added AGL as an insured under the Umbrella Policy.  *See* dkt. 1 at 2–3, 5–6; dkt. 22 at 14.  The legal analysis therefore depends primarily on interpreting the Umbrella Policy, so it—not the Services Agreement—is "central" to this case.  *See Hallmark Specialty*, 2016 WL 6395853 at *4 (holding that an insurance policy was "central to" the case for choice-of-law purposes because the plaintiff sought indemnification under that policy instead of pursuing "a direct claim" under a subcontract).

Because the Umbrella Policy is the central contract, the "law of the state in most intimate contact" to that policy applies.  *Std. Fusee Corp.*, 940 N.E.2d at 816.  The state of most intimate contact is determined through the factors in the Restatement (Second) of Conflict of Law §§ 188, 193 (1971).  *Id.*  The first factor—"the principal location of the insured risk"—is given "more weight" than the others if it can be determined.  *Id.* at 815–16.  But "[i]f no such location exists," the analysis continues to the other factors:  (1) place of contracting; (2) place of contract negotiation; (3) place of performance; (4) location of the subject matter of the contract; and (5) the domicile residence, nationality, place of incorporation, and place of business of the parties.  *Id.*; *see* Restatement (Second) Conflict of Law § 188(2) (1971).

10

Here, the principal location of the insured risk weighs in favor of applying Indiana law. The parties have not identified the number of insured sites in Indiana and Georgia, so the place of the insured's headquarters is the "principal . . . location." *Std. Fusee Corp.*, 940 N.E.2d at 816; *see Visteon Corp. v. Nat'l Union Fire Ins. Co.*, 777 F.3d 415, 418 (7th Cir. 2015). That insured is USIC, which is headquartered in Indiana. *See* dkt. 1 at 5; dkt. 55 at 7. The factor given the most weight therefore favors the application of Indiana substantive law. *See Nat'l Union Fire Ins.*, 940 N.E.2d at 815–16.

The other factors similarly favor Indiana law, on balance. The Umbrella Policy was negotiated and executed in Indiana. *See* dkt. 1 at 5 (¶ 20); dkt. 22 at 15; dkt. 55 at 7. And while it covers insured risks "nationwide," dkt. 53 at 15, USIC's principal place of business is Indiana. *See* dkt. 19-6 at 3, 12; *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (concluding that the "principal place of business" "will typically be found at a corporation's headquarters"). Only the place of performance—the "location where the insurance funds will be put to use," *Std. Fusee Corp.*, 940 N.E.2d at 817—favors Georgia law. *See* dkt. 22 at 14. But this factor is not dispositive and does not alone outweigh the other factors. *See Std. Fusee Corp.*, 940 N.E.2d at 817.

Navigators argues that Georgia law should apply because "AGL contracted with USIC *in Georgia*," and AGL is only a "purported *additional insured*" under the Umbrella Policy instead of the named insurer. Dkt. 55 at 6–7 (emphases in original). But that approach would lead to the same contract being interpreted differently based on the insured or specific loss at issue. For

11

example, Georgia law would apply in a declaratory-judgment suit brought by AGL, while Indiana law would apply in an identical suit brought by USIC.  *See id.*  That outcome is incompatible with Indiana's "uniform-contract-interpretation" approach, which "applies the law of a single state to the whole contract" regardless of the insured or site of risk at issue in a specific state.  *Std. Fusee Corp.*, 940 N.E.2d at 813.  In short, only one state's law can apply to the Umbrella Policy, and Indiana's choice-of-law rules weigh in favor of Indiana substantive law.  *See id.*; *Visteon Corp.*, 777 F.3d at 418 (explaining that under Indiana's uniform-contract-interpretation approach, one state's substantive law governs all covered damages, "wherever they occurred").

Last, Navigators argues that applying Indiana law is unfair because "AGL is forum shopping" by filing this suit in Indiana to take advantage of Indiana law.  *See* dkt. 55 at 6.  But Navigators cites no authority for the proposition that forum shopping is part of Indiana's choice-of-law rules.  *See id.*  Instead, Indiana's rules apply simply because AGL "filed suit in Indiana"; and, under those rules, Indiana substantive law apples.  *Std. Fusee Corp.*, 940 N.E.2d at 813.

## C. 12(b)(6) motion to dismiss for failure to state a claim

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is

one "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616. Federal jurisdiction in this case is based on diversity, so the Court must do its "best to predict how the Indiana Supreme Court would decide" the issues in this case. *Webber v. Butner*, 923 F.3d 479, 481–82 (7th Cir. 2019); *see Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782, 788 (7th Cir. 2017).

### 1. Navigators' Duty to Defend and Indemnify AGL

The parties agree that the Umbrella Policy covers AGL as an "insured" only if AGL is an "insured" under the underlying policy. *See* dkt. 22 at 6, 19; dkt. 53 at 16. They also agree that AGL is an "insured" under the underlying policy only "with respect to" injuries "caused, in whole or in part, by [USIC's] acts or omissions," or "[t]he acts or omissions of those acting on [USIC's] behalf, in the performance of [USIC's] ongoing operations or . . . work." Dkt. 22 at 7, 19–20; dkt. 53 at 16.

Navigators argues that the Personal Injury Lawsuits "concern the sole negligence of AGL" and not USIC's "acts or omissions," so AGL is not an "insured" under either the underlying or Umbrella Policies. Dkt. 55 at 10. It therefore contends that it has no duty to defend or indemnify AGL. *Id.* at 10–

13

11.[6]  AGL responds that its complaint "specifically states that the . . . claimed injuries were caused by USIC's negligence, at least in part."  Dkt. 53 at 16 (citing dkt. 1 at 3–5).

The Injured Parties' complaints in the Personal Injury Lawsuits do not alone define the scope of Navigators' duties to defend and indemnify.  Instead, Indiana courts "look[] beyond the 'eight corners' of the insurance policy and third-party complaint in determining the extent of the insured's defense coverage."  *Indiana Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1269 (Ind. Ct. App. 2009) (explaining *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1291 (Ind. 2006)).  At this motion-to-dismiss stage, when the Court will not consider extrinsic evidence, *see* dkt. 50 at 4 (order denying motion to convert), those facts are drawn from this case's operative complaint.  *See Gunn v. Continental Cas. Co.*, 968 F.3d 802, 805 (7th Cir. 2020) ("A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.").

AGL's complaint in this case alleges that USIC's negligence caused the Injured Parties' injuries.  Dkt. 1 at 3–5 (alleging specific failures in USIC's communications about its gas-line markings, which caused the gas leak "as a direct and proximate result").  Navigators was thus aware that USIC's "acts or omissions" may have caused the gas leak, which, if true, would make AGL an

---

[6] Navigators also argued, initially, that it had no duty to defend because USIC has been released from all liability.  Dkt, 23 at 18–23.  Because of Navigators' reliance on that release, AGL moved to convert the motion to dismiss into a summary-judgment motion, dkt. 32, which the Court denied, ruling that it instead would not consider the release, dkt. 50 at 4–7.  Navigators has therefore withdrawn that argument at this stage, reserving it for "any future dispositive motion."  Dkt. 55 at 10 n.2.

"insured" under the Umbrella Policy.  AGL's complaint therefore provides "sufficient detail to give [Navigators] fair notice" of the breach-of-contract claim based on a failure to defend and indemnify.  *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019).

Navigators' motion to dismiss AGL's breach of contract claim on this basis is therefore **DENIED**.

### 2. Navigators' Contractual Obligations at Mediation under the Umbrella Policy

Navigators argues that "[a]ll claims arising from [its] alleged failure to attend the [2019] Mediation" fail because the Umbrella Policy did not require it to attend the mediation or settle any claims against AGL at that time.  Dkt. 22 at 3, 28–30.  AGL responds that the Umbrella Policy's "Separation of Insured" provision imposed a duty on Navigators to attend the mediation.  *See* dkt. 53 at 20–22, 25.  Under that provision, the Umbrella Policy "applies . . . separately to each insured against whom claim is made or suit is brought."  Dkt. 19-6 at 9.

The "Separation of Insured" provision, however, does not impose obligations at all stages of a claim.  *See id.*  Instead, the Umbrella Policy "appl[ies] in place of the 'controlling underlying insurance'" once that underlying insurance "is exhausted by the payments of judgments or settlements to which this insurance applies."  *Id.* at 5.  After that exhaustion, Navigators has the "obligations to investigate and settle claims or defend suits against the insured."  *Id.*  But before the underlying insurance is exhausted,

Navigators has "the right, but not the duty, to participate in the investigation or settlement of any claim or the defense of any suit against any insured."  *Id.*

AGL's complaint does not allege or argue that the underlying policy had been exhausted before the 2019 mediation.  *See* dkt. 1; dkt. 53 at 20–22. Therefore, under the Umbrella Policy, Navigators had "the right, but not the duty" to participate in the mediation.  Dkt. 19-6 at 5.  With no contractual duty, Navigators cannot be liable for breaching the Umbrella Policy at the time of the 2019 mediation, and its motion to dismiss is thus **GRANTED** to that extent.

### 3.  Navigators' Duty of Good Faith and Fiduciary Duty

AGL's breach of fiduciary duty and breach of good faith claims both require bad faith.  *See Gooch v. State Farm Mut. Auto Ins. Co.*, 712 N.E.2d 38, 40 (Ind. Ct. App. 1999); *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993).  The "primary focus of AGL's bad faith claim is on Navigators' conduct leading up to and at the Mediation," dkt. 53 at 20 n.7, but AGL has also alleged "Navigators has acted without reasonable justification by refusing to defend and indemnify AGL with respect to the claims for relief asserted against it by the Injured Parties," dkt. 1 at 12.  Navigators' only argument for dismissal as to the failure to defend and indemnify is that it "had a rational basis for denying coverage" under the release of liability from USIC's settlement.  Dkt. 22 at 27–28.  Because the Court has since held that the release cannot be considered at this 12(b)(6) stage, dkt. 50 at 4–7, the motion to dismiss is **DENIED** as to bad faith in the failure to defend and indemnify.

16

For the 2019 mediation, Navigators argues that AGL has not pleaded facts supporting bad faith because Navigators' duties under the Umbrella Policy did not apply until the underlying policy was exhausted.[7]  Dkt. 22 at 23, 27.  AGL responds that Navigators deliberately ignored its obligations to defend and indemnify AGL when Navigators received the Injured Parties' statements of liability before the mediation.  Dkt. 53 at 22–24.  Without Indiana precedent resolving when the duty of good faith begins for an excess insurer, the Court must "do [its] best to predict how the Indiana Supreme Court would decide" the issue.  *See Webber*, 923 F.3d at 482.

Here, it's unlikely that the Indiana Supreme Court would hold that AGL's allegations could support a breach of good faith surrounding the November 2019 mediation.  As explained above, the Umbrella Policy did not require Navigators to defend and indemnify AGL before the 2019 mediation because the underlying policy had not been exhausted.  *See Certain Underwriters of Lloyd's v. Gen. Acc. Ins. Co. of Am.*, 699 F. Supp. 732, 738 (S.D. Ind. 1988) ("[T]o expect . . . participat[ion] in settlement negotiations before the primary policy limits were exhausted would be to alter the essential nature of the excess insurance contract.").  Indeed, umbrella insurers have limited participation in and control over third-party claims before the primary insurer's obligations have been exhausted.  *See id.*  Navigators—as only the umbrella insurer— therefore had a good-faith basis to believe that AGL's interests were protected

---

[7] Because Indiana law applies, the Court does not address Navigators' argument that these claims must be dismissed under Georgia law for failing to make a pre-suit demand.  *See* dkt. 55 at 9–10 (citing O.C.G.A. § 33-4-6).

through the underlying policy until its limits were exhausted.  *See* dkt. 19-5 at 26; *Certain Underwriters of Lloyds v. Gen. Acc. Ins. Co. of Am.*, 909 F.2d 228, 232 (7th Cir. 1990) ("The primary insurer's duty to act with due care and in good faith does not disappear simply because the insured purchased excess insurance.").

In short, it's unlikely that the Indiana Supreme Court would hold that AGL's allegations can support bad faith based on Navigators' failing to act—as an umbrella insurer—before the underlying policy's coverage was exhausted and thus before its contractual obligations began.  *See Webber*, 923 F.3d at 482.  Navigators' motion to dismiss AGL's claims for breach of good faith and breach of fiduciary duty is therefore **GRANTED** as to the mediation.

## II.
## Conclusion

Navigators' motion to dismiss is **GRANTED in part and DENIED in part.** Dkt. [19].  AGL's first three claims—breach of contract, breach of fiduciary duty, and breach of good faith—are dismissed as to Navigators' failure to attend and represent AGL at the 2019 mediation.  The motion to dismiss is otherwise denied.

**SO ORDERED.**

Date: 10/27/2021

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Christopher Bechhold
THOMPSON HINE & FLORY
chris.bechhold@thompsonhine.com

Seth Michael Friedman
LEWIS BRISBOIS BISGAARD & SMITH LLP
seth.friedman@lewisbrisbois.com

Gary M. Glass
THOMPSON HINE & FLORY
gary.glass@thompsonhine.com

Anthony J. Hornbach
THOMPSON HINE LLP
tony.hornbach@thompsonhine.com

Siobhan M. Murphy
LEWIS BRISBOIS BISGAARD & SMITH, LLP (Chicago)
siobhan.murphy@lewisbrisbois.com