UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ATLANTA GAS LIGHT COMPANY,<br>SOUTHERN COMPANY GAS<br>　f/k/a AGL RESOURCES INC.,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>NAVIGATORS INSURANCE COMPANY,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　　No. 1:20-cv-02441-JPH-TAB<br>)<br>)<br>)<br>) |

**ORDER ON PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF CLAIM FILE**

**I.      Introduction**

Plaintiffs Atlanta Gas Light Company and Southern Company Gas (collectively, AGL),

seek an order compelling Defendant Navigators Insurance Company to produce its claim file for

a claim arising out of a gas explosion.  As explained in AGL's brief, "[t]his motion arises out of

Navigators' attempt to withhold from discovery a significant number of documents in the Claim

File, contending that said documents are privileged/protected." [Filing No. 66, at ECF p. 1.]  In

an earlier order addressing a discovery dispute based on the same materials, the Court was not

yet convinced AGL would be able to overcome the privileges Navigators had asserted.  [Filing

No. 58, at ECF p. 3.]  However, since that order, depositions have been taken and the issue has

been fully briefed.  In addition, an *in camera review* of the documents supports AGL's

allegations of co-mingling and bad faith.  Therefore, AGL's motion to compel production of the

claim file is granted.  [Filing No. 65.]

## II.    Background

### A.    General procedural background

The AGL companies are two related Georgia corporations.  In 2013, AGL contracted with the United States Infrastructure Corporation (USIC), an Indiana-based corporation, for USIC to locate and mark AGL's underground gas lines in Georgia.  [Filing No. 1, at ECF p. 2.] On August 17, 2018, a gas line explosion in Homerville, Georgia, injured three individuals. [Filing No. 1, at ECF p. 5.]  On August 24, 2018, AGL sent a letter to USIC demanding contractual indemnity from USIC for the gas line incident.  [Filing No. 65-1, at ECF p. 80.]

Following the explosion, the injured parties retained counsel and, before any lawsuit was filed, scheduled a mediation, which occurred on November 6-7, 2019.  [Filing No. 1, at ECF p. 8.]  AGL provided notice of that mediation to USIC's primary and umbrella insurers, including Navigators, and requested that they attend and participate in the mediation.  [Filing No. 1, at ECF p. 8.]  Navigators did not respond to AGL's request and did not attend the mediation.  [Filing No. 71, at ECF p. 3.]  On December 4, 2019, the injured parties entered into a confidential settlement agreement and limited release with USIC releasing USIC from all liability with respect to the gas line incident.  [Filing No. 20-1.]  AGL did not reach any settlement with the injured parties at the mediation.  Thus, on December 13, 2019, the injured parties filed three separate lawsuits against AGL.

However, the present dispute is between AGL and Navigators.  Navigators issued an excess insurance policy to USIC, and AGL claims to be an additional insured under that policy. On January 30, 2020, after the injured parties filed lawsuits against AGL, AGL tendered the personal injury lawsuits to Navigators for defense and indemnification.  [Filing No. 1.] Subsequently, on February 14, 2020, Navigators denied any duty to defend or indemnify AGL

based on the settlement between USIC and the injured parties.  [Filing No. 20-1.]  Thus, on

September 12, 2020, AGL filed a complaint against Navigators for claims of breach of contract,

breach of fiduciary duty, bad faith, and declaratory judgment.  [Filing No. 1.]  Each of AGL's

claims arises out of Navigators' refusal to investigate, adjust, defend, and indemnify AGL under

Navigators' umbrella policy.  In response to AGL's complaint, Navigators filed a motion to

dismiss, which was denied in part and granted in part by District Judge J.P. Hanlon on October

27, 2021.  [Filing No. 59.]  Judge Hanlon held that prior to the mediation Navigators did not

breach the Navigators policy or breach any alleged duty of good faith to AGL as a matter of law.

[Filing No. 59, at ECF p. 16-19.]

> **B.     The Claim File**

From the outset, the parties have quarreled over access to the claim file.  In the Case

Management Plan, the Court overruled Navigators' objections to setting pretrial deadlines and

proceeding with discovery despite the pending motion to dismiss, noting that "discovery at this

stage is limited to the claim file and to a deposition of the claims adjuster."  [Filing No. 27, at

ECF p. 10.]  Navigators filed objections to the CMP in December 2020, which the Court

overruled in April 2021.  [Filing No. 50.]  Navigators continued to resist providing its claim file

to AGL.  Thus, the Court ordered Navigators to produce the file by May 11, 2021, noting that

Navigators was "erecting needless barriers to the orderly progression of this case[.]"  [Filing No.

54, at ECF p.1.]

Navigators produced its claim file for Claim EXC307962 by the Court's May 11, 2021,

deadline, along with a letter and a privilege log of documents in the claim file that were being

withheld or redacted from production.  On May 19, 2021, AGL sent a letter to Navigators

contesting Navigators' position on withheld documents and requesting *in camera* review of the

withheld documents.  [Filing No. 70, at ECF p. 4-6.]  On May 25, 2021, Navigators responded that an *in camera* review was premature.  That same day, Navigators produced additional claim file materials, along with an updated privilege log.  The Court ordered Navigators to provide the magistrate judge unredacted copies of the documents on Navigators' privilege log prior to a discovery dispute conference.  Navigators provided copies to the Court on May 28, 2021.  Subsequently, the parties had a discovery dispute conference with the magistrate judge.  On June 7, 2021, the magistrate judge issued the ruling from the June 3, 2021, conference, stating in part that Navigators "has raised strong arguments that [AGL] cannot overcome the privileges." [Filing No. 58, at ECF p. 3.]  A closer examination—aided by additional evidence—reveals Navigators' arguments are not as strong as they initially appeared.

This additional evidence shows that Navigators assigned a single claim number and a single adjuster—Yara Mouded—to handle all the claims asserted against both its named insured, USIC, and its additional insured, AGL, arising out of the gas line incident.  On June 30, 2021, AGL deposed Mouded.  AGL contends that the claim file and log reflect that while Navigators was in continuous contact with USIC regarding the status of the claims asserted against USIC and AGL, at the direction of USIC, Navigators had no communication with AGL until February 14, 2020.  On that date, Navigators, in concert with USIC, USIC's counsel, and USIC's primary insurer, Zurich Insurance Company, denied AGL's request for defense and indemnification for the injury lawsuits filed by the injured parties in the gas line incident.  [Filing No. 66, at ECF p. 3-4.]  AGL claims it sent written requests to Navigators requesting defense and indemnification on October 21, 2019, and again on November 4, 2019, but nothing in the claim file notes mentions AGL's tenders prior to mediation.  Mouded testified that she had no recollection of any communications with either USIC or AGL during that timeframe.

After September 20, 2019, there is no note in the claim file under February 10, 2020, at which point there is a note from Mouded that states:

> The insured USIC settled the matter within Zurich primary policy pre-suit end of 2019.  They obtained releases.  AGL now trying to tender the suits against them to USIC again via their counsel Thompson Hine.  I spoke to USIC counsel and Zurich and we drafted identical denials.  Submitted frat [sic] denial for approval that needs to be issued before end of week.

[Filing No. 65-1, at ECF p. 90.]  AGL argues that Navigators' coordination with USIC, USIC's counsel, and Zurich to deny AGL's claim is "further showcased in emails among those parties beginning on February 4, 2020, which led to Navigators' and Zurich's nearly identical coverage denial letters to AGL."  [Filing No. 66, at ECF p. 5.]  At Mouded's deposition, when asked what these three parties could possibly be discussing in February 2020 other than AGL's tender, she stated that she could not remember.  Mouded further testified that she would need to see the unredacted copies of the emails in the claim file to refresh her recollection as to what was being discussed at that time.  [Filing No. 65-1, at ECF p. 28-29.]  In addition, Mouded admitted that USIC's counsel drafted Navigators' coverage denial letter.  [Filing No. 65-1, at ECF p. 29.]  Mouded could not recall thinking about whether it was a violation of the Separation of Insureds provision of the policy to have USIC's counsel draft the coverage denial letter to AGL on behalf of Navigators.  [Filing No. 65-1, at ECF p. 31.]

Based on the documents produced to date and Mouded's testimony, AGL maintains that "it is clear that Navigators' entire Claim File is relevant to AGL's bad faith claim against Navigators arising out of Navigators' conduct in breaching, inter alia, the Separation of Insureds provision in the Policy and Navigators' implied duty of good faith and fair dealing in the handling of the claims asserted against AGL by the Injured Parties."  [Filing No. 66, at ECF p. 6.]  Thus, AGL filed the underlying motion to compel production of the entire claim file.  [Filing

No. 65.]  Navigators opposes the motion and continues to assert that work-product, attorney-client, and common interest protections apply.  [Filing No. 71.]

On March 16, 2022, the Court held a telephonic status conference with the parties to discuss the motion to compel.  [Filing No. 82.]  Navigators provided the Court with an updated privilege log that identified the titles or positions held by all individuals identified in the log.  In addition, Navigators filed unredacted copies of the documents at issue *ex parte* for *in camera review* by the Court.

## III.   Discussion

The lingering question is whether AGL is entitled to access the remaining documents from the claim file, which Navigators asserts are subject to work-product, attorney-client, and common-interest privileges.  Courts have broad discretion over discovery.  *See* Fed. R. Civ. P. 26(b)(1) (A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.")  A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses.  Fed. R. Civ. P. 37(a)(3)-(4).  The party withholding responsive documents from discovery bears the burden of establishing that the withheld materials are not discoverable.  *See, e.g.,* Fed. R. Civ. P. 26(b)(5)(A); *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, No. 1:13-cv-1316-JMS-TAB, 2014 WL 7360049, at *1 (S.D. Ind. Dec. 23, 3014).  Thus, Navigators, as the entity

asserting privilege, has the burden of establishing that the asserted privileges apply and the withheld materials are not discoverable.

      **A.**       **Specificity of the Privilege Log**

AGL claims it is entitled to production of the entire claim file because Navigators has not made a sufficiently specific showing that the documents identified in its privilege log are entitled to any privilege or work product protection.  "The party asserting [attorney-client] privilege has the burden to prove the applicability of the privilege as to each and every document." *Indianapolis Airport Auth*., No. 1:13-cv-1316-JMS-TAB, 2014 WL 7360049, at *1.  For instance, when Navigators asserted attorney-client privilege on its log, it did not identify the attorney on the relevant communication, and Navigators provided no explanation for why each document marked "Work Product/Anticipation of Litigation" was withheld.

Despite AGL's claims to the contrary, and some obvious shortcomings with the log itself, Navigators' privilege log is sufficiently, if minimally, specific.  Navigators provided AGL with the privilege log and two letters explaining its position on the documents in detail.  [Filing No. 65-1, at ECF p. 4-6; Filing No. 70, at ECF p. 8-10.]  AGL could have sought clarification from Navigators on some of the issues raised, such as the identity of the lawyers.  Navigators informed the Court that prior to the motion to compel, AGL never claimed they did not know the individuals listed on the privilege log, and if they had, Navigators would have provided identification.  Navigators clarified USIC's counsel for the gas line incident in its response to the motion to compel.  Navigators also eventually provided an updated log at the Court's request before the March 16 conference.  The updated log identified the attorney or employee that sent or received each document on the log and their respective title.  Overall, the log is relatively

comprehensive, and the shortcomings of the log itself are not so egregious that the Court would allow AGL access to the documents on this basis.

### B.   Overcoming Asserted Attorney-Client, Work Product, and Common Interest Privileges

AGL argues that Navigators cannot demonstrate that the relevant documents in the claim file are privileged attorney-client communications or attorney work product because Mouded admitted that at least some of the documents relate to Navigators coordinating the denial of AGL's claim with USIC's counsel and Zurich.  [Filing No. 66, at ECF p. 12.]  Federal courts presiding over a diversity action look to state law, not federal law, in determining the existence and scope of the attorney-client privilege.  *Woodruff v. Am. Family Mut. Ins. Co.*, 291 F.R.D. 239, 241 (S.D. Ind. 2013).

Under Indiana law, attorneys are protected from testifying as to communications made to them in the course of their professional business.  Thus, " '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser (8) except if the protection be waived.' "  *Kleinrichert v. Am. Family Ins. Group*, No. 1:10-cv-13-JMS-TAB, 2011 WL 470614, at *2 (S.D. Ind. Feb. 3, 2011) (quoting *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1204 (S.D. Ind. 1994)).  However, "the [attorney-client] privilege is not an absolute, eternal shield; a client who does not safeguard the confidentiality of communications that would otherwise be protected waives the privilege and subjects the communications to compelled disclosure."  *Greenbank v. Great American Assur. Co.*, No. 3:18-cv-239-SEB-MPB, 2019 WL 6522885, at *6 (S.D. Ind. Dec. 4, 2019) (internal citation and quotation marks omitted).

In comparison, the work product doctrine is governed by federal law.  *Woodruff*, 291 F.R.D. at 241.  "The work-product doctrine protects (1) documents and tangible things that are (2) prepared in anticipation of litigation or for trial (3) by or for another party or its representative."  *Indianapolis Airport Auth.*, No. 1:13-cv-1316-JMS-TAB, 2014 WL 7360049, at *3.  As noted in the *Indianapolis Airport Authority* decision, it can be difficult to determine the primary purpose behind creating a document in the insurance context, so there is a presumption, at least in the case of first-party insurance coverage, that it is unreasonable to anticipate litigation before the insurer reaches a final decision on a claim.  *Id.*  "Thus, any document prepared before an insurer makes a final decision on its insured's claim is presumed not to be work product."  *Id.* *See also Greenbank*, No. 3-18-cv-239-SEB-MPB, 2019 WL 6522885, at *9 ("If the work-product privilege is established, it can be overcome if the party seeking the materials . . . shows: (1) a substantial need for the materials, and (2) an inability to obtain the substantial equivalent of the information without undue hardship.  Even upon such a showing, however, the lawyer's mental processes are required to be protected from disclosure.  The mental impressions of a corporate representative are also protected from disclosure, even if there is a substantial need.").

Turning first to the presumption that any document prepared before an insurer makes a final decision on an insured's claim is not work product, one point of contention between the parties is when they became adverse and the impact that should have on the discoverability of the documents at issue.  Navigators claims that the parties have been adverse since shortly after the gas main incident in 2018.  [Filing No. 71, at ECF p. 3.]  Navigators argues that, at a minimum, work product should apply to any documents prior to AGL's tender of its additional insured claim to Navigators on October 21, 2019, because AGL has failed to point to any evidence prior to that date that AGL was making a claim to be an additional insured under Navigators' policy.

[Filing No. 71, at ECF p. 13.]  In addition, Navigators argues that February 10, 2020, is a "reasonable" date that work product would apply to any first party claim file because the claim notes show that the decision to deny coverage had been made as of that date.  [Filing No. 71, at ECF p. 9.]

However, Navigators did not inform AGL that it was denying coverage until February 14, 2020.  [Filing No. 20-2.]  Thus, February 14, 2020, is the applicable date for any work product protection to kick in.  Navigators even acknowledged this date in their May 11, 2021, letter to AGL explaining the privilege log and reason for withholding or redacting the documents at issue, noting: "Navigators is not logging or producing any documents created after the February 14, 2020, denial letter was sent, as any such documents are plainly protected by at a minimum the work product privilege."  [Filing No. 65-1, at ECF p. 5.]  Thus, AGL has successfully demonstrated that Navigators cannot claim work product privilege for any documents created prior to February 14, 2020.

Navigators notes that the documents withheld based on attorney-client (and common interest) privilege give insight into USIC's counsel thoughts on AGL's claims against USIC.  In addition, Navigators argues that the claims for contractual indemnification by AGL and the claims for additional insured status under the Navigators policy are closely related in that they both require proof of some fault of USIC which causes AGL's liability to the underlying plaintiffs.  [Filing No. 71, at ECF p. 10.]  In contrast, AGL provides a number of reasons why the documents at issue are not privileged.  AGL has shown that at least some of the documents not yet produced relate to Navigators' coordinating the denial of AGL's claim with USIC counsel and Zurich.  Navigators offers no response and fails to explain how communications among Navigators, USIC, USIC's counsel and/or Zurich coordinating a denial of AGL's request for

coverage could possibly be privileged or protected, especially in light of the fact that such documents have no bearing on any indemnification claim by AGL against USIC.

The Court has reviewed the documents at issue and they are, overall, privileged. However, the evidence shows that many of the documents withheld support allegations of collusion between USIC, Zurich, and Navigators to deny AGL coverage under the policy. In addition, several of the communications occurred after USIC settled with the injured parties but before denying AGL's tender. Thus, the Court must consider whether the evidence of bad faith, and AGL's claim of a substantial need, can overcome Navigators' privilege assertions.

###    C.    Substantial Need and Lack of Availability Elsewhere

AGL argues that it is entitled to an order compelling Navigators to produce the claim file in its entirety because Navigators is the only entity that maintains information pertinent to AGL's bad faith and breach of fiduciary duty claims. Thus, AGL argues there is a "rebuttable presumption" that the claim file is discoverable in this scenario, where AGL has demonstrated a substantial need for the materials and lack of availability elsewhere. [Filing No. 66, at ECF p. 13.] Navigators disagrees, arguing that AGL should not be able to use its bad faith claim to obtain documents evaluating and discussing information that will bear on AGL's claims against USIC. [Filing No. 71, at ECF p. 12.]

Even if the objecting person meets its burden of demonstrating the work product privilege applies, the Court may order production of privileged documents if they are otherwise discoverable and the requesting party "shows it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Moreover, the Seventh Circuit has held that "allowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad

faith, in light of the insurer's virtual monopoly over the evidence required to support such an action." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996).  In this setting, the plaintiff must demonstrate some likelihood or probability that the documents sought contain evidence of bad faith.  *Id.*

Even if Navigators had met its burden of demonstrating that the claim file documents are protected, AGL has presented sufficient evidence of bad faith to overcome any applicable privilege.  AGL has met and exceeded this standard by providing evidence suggesting Navigators' bad faith and demonstrating that the claim file likely contains relevant evidence bearing directly on this issue.  The evidence also supports AGL's claim that Navigators violated the Separation of Insureds provision of the policy.  Navigators assigned a single claim number and single adjuster to handle all claims asserted by both USIC and AGL arising out of the gas line incident, even though a clear conflict of interest existed between USIC and AGL.  In addition, while Navigators was in continuous contact with USIC, it ignored AGL entirely until February 14, 2020, when it denied AGL's coverage claim—through a letter drafted by counsel for USIC and Zurich.

When asked what these parties could possibly be discussing in February 2020 other than AGL's tender, Mouded stated that she could not remember.  Mouded admitted during her deposition that USIC's counsel drafted Navigators' coverage denial letter to AGL, even though USIC had settled the injured parties' claims against USIC months earlier.  This evidence is sufficient for AGL to meet its low hurdle of demonstrating the possibility that some documents withheld or redacted by Navigators are possibly relevant to AGL's bad faith and breach of fiduciary duty claims.  AGL has demonstrated a substantial need for these materials, as it cannot secure this information through alternate means.

As part of its rebuttal argument, Navigators claims that there will be no harm to AGL by withholding these documents because there is a "limited universe" of information that Navigators has which will bear on the claims at issue, AGL has already deposed Navigators' claim handler who issued the denial letter, and AGL can take other depositions to find out the necessary information.  [Filing No. 71, at ECF p. 13.]  However, none of these arguments is persuasive.  In noting that there is indeed a "limited universe" of relevant information, Navigators admits that the documents could be of some use to AGL.  In relation to depositions already taken, Mouded stated in response to multiple inquiries at her deposition that she would need to see the unredacted versions of the withheld documents to recall conversations that may have occurred leading up to the denial letter being sent to AGL.  Navigators cannot rely on that failed deposition as a reason to continue to withhold these documents.  In addition, while Navigators claims AGL can take other depositions to find out the information it needs, Navigators has not identified any other individuals that AGL could supposedly depose to access this information.  AGL's substantial need for the documents at issue overcomes Navigator's work product privilege.

Navigators claims that it has produced everything except for documents showing "Navigators, USIC or defense counsel's mental impressions, thoughts, analysis and/or strategy for the claims against USIC." [Filing No. 71, at ECF p. 9.]  However, AGL has shown, and the Court can confirm after reviewing the documents at issue, that at least some of the documents that have not been produced relate to Navigators coordinating with USIC and Zurich to deny AGL's claim.  Navigators cannot convince the Court that communications demonstrating coordination among Navigators, USIC, USIC's counsel, and Zurich are entitled to protection in this circumstance.  These documents relate not to the underlying merit of AGL's indemnification

claim, but rather to Navigators' denial of that claim, in coordination with these other entities. This goes to the heart of AGL's present claim, and AGL has demonstrated that it is entitled to these documents.

Navigators also argues that documents in the third-party claim file would "plainly" be protected from disclosure to AGL in any litigation between AGL and USIC, so they are "likewise protected in this litigation." [Filing No. 71, at ECF p. 8.] However, Navigators cites no authority for the proposition that if documents would be privileged in a lawsuit between AGL and USIC, they are likewise protected in this litigation between AGL and Navigators. The reality is that it is presumed that documents in the claim file, created at least up until February 14, 2020, are discoverable. *See Indianapolis Airport Auth.*, No. 1:13-cv-01316-JMS-TAB, 2014 WL 7360049, at *3 ("[A]ny document prepared before an insurer makes a final decision on its insured's claim is presumed not to be work product."). This case involves a coverage dispute between Navigators and AGL—not AGL and USIC. Navigators cannot change the applicable standard, which presumes the claim file is discoverable.

Finally, AGL has set forth evidence that could support finding Navigators violated the Separation of Insureds provision of the policy by comingling USIC and AGL's claims in a single file with a single adjuster, even though a clear conflict of interest existed between USIC and AGL. While Navigators was in continuous contact with USIC, it ignored AGL's claim altogether until February 14, 2020, when it colluded with USIC, USIC's counsel, and Zurich to deny AGL's coverage claim. Navigators cannot have it both ways. Mouded admitted that USIC's counsel drafted Navigators' coverage denial to AGL even though USIC had settled the injured parties' claims against USIC months earlier. This evidence is sufficient for AGL to meet its "low hurdle" of demonstrating the "possibility" that some of the documents withheld and

redacted by Navigators are relevant to AGL's bad faith and breach of fiduciary duty claims.

*Logan*, 96 F.3d at 977.

Navigators argues that it is important to distinguish between first-party and third-party claim files, noting that this district has recognized, "[t]he difference between first and third party claims is important in preserving the underlying purpose of the work product privilege." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 190 F.R.D. 532, 538 (S.D. Ind. 1999).[1] Navigators concedes that the issues involved in the third-party claim and the first-party claim are substantially similar. At the same time, Navigators argues that this Court should retroactively absolve it for its failure to separate the claims due to the obvious conflict between USIC and AGL. Navigators asks the Court to conclude that the majority of the withheld documents relate only to AGL's claim against USIC, are privileged and, therefore, are not discoverable. If Navigators desired to preserve any such privileges, then per the express terms of the policy and its duty of good faith to its additional insured, it should have separated the claims.

Moreover, Navigators fails to acknowledge that all of its arguments could constitute admissions that it waived any claim of privilege by breaching its fiduciary duties and the Separation of Insureds clause in the policy. Navigators did not create a separate claim file, and at one point contended that there was "no reason" to do so since Navigators ultimately

---

[1] While some courts use a bright line rule to conclude that files generated during the investigation of third-party claims are made in anticipation of litigation and thus not discoverable, others, including this one, have just used the fact of whether the claim is first or third party as a factor in its analysis. *See, e.g., id.* at 536 ("The Seventh Circuit did not address in *Logan* the distinction between first and third party claims. This case does not require the court to decide whether that difference alone should be decisive in evaluating claims of work product protection, although it is one factor in the analysis."); *Estate of Her v. Sadownikow*, No. 17-cv-1015, 2018 WL 3574888, at *4-5 (E.D. Wis. July 25, 2018) (declining to adopt bright-line rule that claims files in third party cases are not discoverable). *Cf. Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D. Ga. 2008) (third-party claim file constituted work product from the moment the insurer was notified of claim).

determined that AGL was not an additional insured.  [Filing No. 71, at ECF p. 14.]  AGL has

presented evidence that could support finding Navigators failed to acknowledge the conflict of

interest between USIC and AGL, worked with USIC, USIC's counsel, and Zurich to coordinate

denials of AGL's coverage claim, potentially violated the Separation of Insureds provision of the

policy, and may have waived its claims that the communications are privileged.  *See, e.g., Cedell*

*v. Farmers Ins. Co. of Wash.*, 185 Wn.2d 686, 699 n.5 (2013) (cautioning insurers to "set up and

maintain separate [claim] files so as not to comingle different functions" and compelling

production of insurer's claim file).

       Some courts that have examined situations in which an insurer fails to maintain separate

claim files for different purposes have held that such a failure results in a waiver of privilege in

the context of a bad faith claim.  *See, e.g., Meier v. Travelers Home & Marine Ins. Co.*, No. C15-

0022RSL, 2016 WL 4447050, at *2 n.4 (W.D. Wash. Aug. 24, 2016) ("Because all of Travelers'

documents and communications related to Ms. Meier have been kept in a single file, the *Cedell*

court's policy judgment governs the outcome of this motion.  To the extent Travelers has refused

to produce documents contained in its combined claim/litigation file on the ground of attorney-

client privilege, its objection is overruled….  Had Travelers maintained a separate litigation file,

plaintiff would not gain wholesale access to that file simply because she filed a coverage action

before the adjustment process was completed.  On the other hand, defendant would not be able to

withhold as privileged communications and documents—even those contained in a separate file

marked 'litigation'—if they were relevant to the bad faith claim.").[2]

---

[2] Of course, Washington law does not apply to this case.  The Indiana Court of Appeals made
clear in *Hartford Fin. Servs. Group, Inc. v. Lake County Park and Rec. Bd.*, 717 N.E.2d 1232,
1237 (Ind. Ct. App. 1999), that Indiana does not apply a blanket exception to the attorney-client
privilege in a first party claim of bad faith against an insurer.  That court noted that to establish a
claim for bad faith, the facts "can be developed through depositions and other discovery of non-

Whether AGL is an additional insured is not the issue presently before the Court.  Rather, before the Court is a discovery dispute over a limited number of documents in the claim file at issue.  Thus, while the Court need not, and should not, decide whether AGL is an additional insured, AGL has a strong argument that it is, which strengthens AGL's need for these documents.  For instance, Navigators admitted in its February 14, 2020, denial letter that Navigators umbrella policy covered AGL as an additional insured.  [Filing No. 20-2, at ECF p. 2-3.] Navigators attempts to justify its failures by stating that it did not need to set up a separate claim file and number because it determined AGL was not an additional insured.  This is directly contrary to the statement in its February 10, 2020, denial letter.  Moreover, Navigators admits it knew AGL and USIC were adverse all the way back on August 24, 2018, yet then tries to retroactively argue it was correct to not create a separate claim file almost a year and a half later.

Navigators claims that allowing AGL access to documents it would never have in a lawsuit directly against USIC simply because it is claiming additional insured coverage under USIC's insurance policy would defeat the very purposes of the work-product, attorney-client, and common interest privileges.  [Filing No. 71, at ECF p. 2.] However, AGL is not entitled to access simply because it is claiming to be an additional insured; it is because of the potential bad faith and co-mingling.  Moreover, Navigators' argument that there will be no harm to AGL by withholding these documents falls short.  Adjuster Mouded's deposition was not helpful, as she could not recall conversations and stated that she would need to see the claim file in its entirety to answer important questions from AGL.  The magistrate judge reviewed the unredacted

---

privileged information.  A simple assertion that an insured cannot otherwise prove a case of bad faith does not automatically permit an insured to rummage through the insurer's claims file." *Id.* Nevertheless, as explained throughout this order, the facts in this case support overruling the asserted privileges.

documents provided by Navigators and concludes they are very relevant to AGL's claim of bad faith. For all these reasons, AGL is entitled to access the remaining documents in the claim file.[3]

## IV.   Conclusion

AGL is entitled to the claim file in its entirety. Navigators is the only entity that maintains information pertinent to AGL's bad faith and breach of fiduciary duty claims. In addition, Navigators failed to identify the conflict of interest between USIC and AGL and separate the insured, resulting in one adjuster and one claim file. The Court has reviewed the documents, and they are highly relevant to AGL's claim of bad faith.[4] The documents also clearly show a level of coordination between counsel for USIC, Navigators, and Zurich colluding to deny AGL coverage under the policy. Accordingly, AGL's motion to compel production of the remaining documents of the claim file [Filing No. 65] is granted. Navigators shall produce unredacted versions of these documents within 14 days of this order.

Date: 4/19/2022   _____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

---

[3] Navigators also asserts the common interest privilege with many of the documents at issue. "Although occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person. In effect, the common interest doctrine extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The Court concluded that AGL has successfully overridden Navigators' claims of attorney client and work product privilege over the disputed materials. Thus, Navigators' assertion of common interest privilege does not provide any additional protections and need not be analyzed further.

[4] Portions of the redacted documents contain mundane information and idle chatter that is not relevant to AGL's bad faith claim, such as parties discussing what day or time they would be available to meet. However, it would be needlessly time consuming to direct Navigators' counsel to strike a line here or there, given that these conversations occur in the context of otherwise relevant communications. Thus, the Court orders Navigators to produce the withheld documents in unredacted form in their entirety.

Distribution:

All ECF-registered counsel of record via email